IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

LAMAR FIELDS,

Defendant.

CRIMINAL ACTION
NO. 15-129

## OPINION

Slomsky, J.                                                                    April 12, 2016

## I.    INTRODUCTION

Before the Court are pro se Defendant Lamar Fields' Pre-Trial Omnibus Motions.  (Doc. Nos. 25, 26, 56.)[1]  The Court has already ruled on multiple Pre-Trial Motions filed by Defendant. The following Pre-Trial Motions filed by him are outstanding: (1) Motion to Suppress Post-Arrest Statements (Doc. No. 25); (2) Motion to Dismiss for Pre-Indictment Delay (Doc. No. 26); and (3) Motion to Dismiss for Abuse of the Grand Jury Process, Motion to Dismiss for Prosecutorial Misconduct, Motion to Dismiss for Fifth Amendment Violations, Motion for Disclosure of Matters Occurring before the Grand Jury, and a Request for Disclosure of Grand Jury Empanelment Dates and Selection Records (collectively, "Motions on Grand Jury Matters") (Doc. Nos. 25, 56, 70).  The Court has held several hearings on Defendant's Pre-Trial Motions and has received multiple briefings from the parties.  The outstanding Pre-Trial Motions are now ripe for a decision.

---

[1]  The Court originally appointed counsel to represent Defendant.  He elected to represent himself and court-appointed counsel was relieved of the representation.  The Court appointed Jose Luis Ongay, Esquire, as stand-by counsel in the event Defendant decided to consult with counsel.

## II.    BACKGROUND

On April 1, 2015, Defendant Lamar Fields was indicted by a grand jury and charged as follows: Count 1 – conspiracy to distribute Oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 846; Counts 2 through 32 – distribution of Oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2; Counts 33 through 63 – acquiring Oxycodone, a Schedule II controlled substance, by fraud, in violation of 21 U.S.C. § 843(a) and 18 U.S.C. § 2.  (Doc. No. 1.)  On May 22, 2015, Defendant pled not guilty to all counts before United States Magistrate Judge Carol Sandra Moore Wells.

On September 29, 2015, Defendant filed his pro se Pre-Trial Omnibus Motions.[2]   (Doc. Nos. 25, 26).  Thereafter, because Defendant was proceeding pro se, the Court afforded him and the Government latitude on filing related responses and replies, and hearings were held on these motions.  A chronological list of additional filings and hearings follows:

- On October 1 and 16, 2015, the Government filed Responses to Defendant's Pre-Trial Motions.  (Doc. Nos. 27, 34.)

- On October 27, 2015, a hearing was held on Defendant's Pre-Trial Motions.

- On November 2, 2015, Defendant filed a Reply to the Government's Responses.  (Doc. No. 47.)

- On November 5, 2015, the Government filed a Response to Defendant's Motions and Reply.  (Doc. No. 49.)

---

[2] Throughout the history of this case, there have been numerous pre-trial motions and responses filed, and several hearings were held on these motions.  In this Opinion, the Court will only discuss the pertinent procedural history, motions, and other court filings as they relate to the outstanding motions.

- On November 16, 2015, Defendant filed a Supplemental Motion to Defendant's Pre-Trial Omnibus Motions.[3]   (Doc. No. 56.)

- On November 16, 2015, the Government filed a Response to Defendant's Supplemental Motion.  (Doc. No. 57.)

- On November 27, 2015, Defendant filed a Reply to the Government's Response to Defendant's Supplemental Motion.  (Doc. No. 61.)

On January 13, 2016, a Pre-Trial Motions hearing was held, during which the Court instructed the parties to file final briefing on the Motions on Grand Jury Matters.  On January 20, 2016, the Government filed its Response to Defendant's Motions on Grand Jury Matters.  (Doc. No. 69.)  Defendant filed a Reply to the Government's Response on February 1, 2016.  (Doc. No. 70.)

On March 1, 2016, upon the request of Defendant, another hearing was held.  Defendant explained that he had not had the opportunity to sufficiently respond to the Government's Response to Defendant's Motions on Grand Jury Matters (Doc. No. 69), and he requested additional time to respond.  He also requested that the Court hold another follow-up Pre-Trial Motions hearing.  The Court granted these requests.  (Doc. Nos. 77, 78.)  On March 21, 2016, Defendant filed another Reply to the Government's Response.  (Doc. No. 82.)  On March 23, 2016, a final Pre-Trial Motions hearing was held.[4]

---

[3] Defendant originally filed the Supplemental Motion on November 5, 2015.  (Doc. No. 51.)  In a letter to the Court dated November 9, 2015, Defendant explained that, due to a clerical error, the Supplemental Motion was filed incorrectly.  (Doc. No. 59.)  Defendant filed a corrected version of the Supplemental Motion (Doc. No. 56), which will be used by the Court in its analysis of Defendant's claims.

[4] On April 1, 2016, following the last hearing, the Court received a letter from Defendant which provided further statements of law in support of his Motions.  (Doc. No. 85.)  The Court ordered that this letter be filed of record.  (Doc. No. 84.)

For the following reasons, the Court will deny the balance of Defendant's Pre-Trial Motions.

III.     **ANALYSIS**

   **A.  Motion to Suppress Statements**

Defendant's first Pre-Trial Motion is to Suppress Post-Arrest Statements.  (Doc. No. 25 at 6.)  Defendant alleges that when he was arrested by Drug Enforcement Agency ("DEA") agents on May 18, 2015, which occurred after his indictment on April 1, 2015, the agents who transported him to his arraignment interrogated him without properly advising him of his Miranda rights.  (Id.)  Defendant argues that the Miranda warnings given to him did not specify that he had a right to have counsel present while he was being questioned, but rather that he had a general right to counsel.  (Doc. No. 47 at 2-4.)  He also contends that any waiver of his rights was made unknowingly and involuntarily.  (Id.)  Defendant seeks to suppress any statements that he made to the agents during the drive to the courthouse for his arraignment, as well as any evidence derived from those statements, arguing that the statements were taken in violation of his Fifth and Sixth Amendment rights to have counsel present during questioning.  (Doc. No. 25 at 7.)

The Government submits that the DEA agents gave sufficient Miranda warnings—including the right to an attorney—and that Defendant nonetheless informed them that he wished to waive his rights and provide information to the agents during the post-indictment conversation.  (Doc. No. 34 at 4.)

 On October 27, 2015, the Court held a hearing on Defendant's Motions.  DEA Agent Gerard Gobin—who arrested Defendant—testified that he gave Defendant his Miranda warnings in front of another law enforcement officer and explained to Defendant that he had a right to

counsel.  (Doc. No. 60 at 12-20.)  Agent Gobin recounted the conversation that took place in the

car:

> AGENT GOBIN: I told Mr. Fields before he says anything I—he has the right to remain silent, anything he says can be used in court.  I also told Lamar Fields that he has a right to an attorney if he cannot afford one, one will be appointed for him.  And at that point I asked him if he understood his rights.  He at first shook his head yes and I said I need to hear something verbal from you and he said, yes, he understood his rights and he—further, we had a little brief conversation, I said are you familiar with the criminal justice system? Have you been in it before? And you understand what's going on and he acknowledged that he did.
>
> . . .
>
> DEFENDANT: Did you specifically tell me that my right to an attorney was for this interrogation or my initial appearance?
>
> AGENT GOBIN: I didn't specify either way.  I said before you say anything let me explain about my investigation and you acknowledged that you understood your rights.

(Id. at 15, 24.)  Agent Gobin also testified that at no time did Defendant indicate that he wanted

counsel present during the conversation.  (Id. at 25.)

Defendant asserts that his Fifth and Sixth Amendment rights were violated by this

interrogation.  He alleges that the Miranda warnings given by Agent Gobin were inadequate.

Defendant also alleges a Sixth Amendment violation because the interrogation occurred after

Defendant was indicted.  The Sixth Amendment right to counsel during questioning attaches

after "judicial proceedings have been initiated against [defendant] whether by way of formal

charge, preliminary hearing, indictment, information, or arraignment."  Brewer v. Williams, 430

U.S. 387, 398 (1977) (quotations omitted).  The Sixth Amendment right to counsel can be

waived by the defendant.  Patterson v. Illinois, 487 U.S. 285, 292 (1988).

Thus, the parties disagree about: (1) whether Defendant was sufficiently advised of his right to counsel during questioning; and (2) whether Defendant knowingly, intelligently, and voluntarily waived his right to counsel when he was questioned post-indictment.

First, Defendant was sufficiently advised of his right to counsel.  In Miranda v. Arizona, the United States Supreme Court announced the prophylactic rule that prior to any custodial interrogation, police officers must advise the individual being questioned that "he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444 (1966).  Miranda does not "extend[] to the precise formulation of the warnings given [to] a criminal defendant" and does not "require[] a verbatim recital of the words [in that] opinion." California v. Prysock, 453 U.S. 355, 359-60 (1981).  All that is required is that "the warnings reasonably convey to a suspect his rights as required by Miranda."  Florida v. Powell, 559 U.S. 50, 60 (2010) (quotations omitted).  Miranda warnings are adequate when in compliance with these principles.

When adequate Miranda warnings are given by an officer, the individual being questioned is sufficiently made aware of his right to counsel under both the Fifth and Sixth Amendments.  The United States Supreme Court has held that "an accused who is admonished with the warnings prescribed . . . in Miranda . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."  Patterson, 487 U.S. at 296.  In Patterson, an individual in custody was informed that he had been formally indicted.  Id. The authorities then, on two occasions, gave the defendant a Miranda waiver form that contained warnings specifying "his right to counsel and of the consequences of any statement he might

make to police," and then proceeded to question him.  Id. at 287.  The Supreme Court determined that the Miranda warnings properly advised the defendant of his Sixth Amendment right to have counsel present during the post-indictment questioning.  Id.

From the facts of this case, it is clear that Agent Gobin sufficiently furnished Defendant with his Miranda rights.  Agent Gobin explained that Defendant had the right to remain silent, that anything he said could be used in court against him, that he had the right to an attorney, and that one would be appointed to him if he could not afford one.  (Doc. No. 60 at 15.)  Those warnings are all that are required by Miranda.  384 U.S. at 483.  There is no requirement that the warning of a general right to counsel include "any express reference to the right to counsel during interrogation."  United States v. Warren, 642 F.3d 182, 186 (3d Cir. 2011).  Rather, the question regarding the sufficiency of the warning is whether there was any language in the warning that would appear to *limit* the right to counsel.  Id. at 185.  Here, Agent Gobin informed Defendant of his general right to counsel, and he did not suggest any limitation of the right in the delivery of the Miranda warnings.  Therefore, the warnings were sufficient, and Defendant was adequately made aware of his right to have counsel present if he did not wish to remain silent as required under both the Fifth and Sixth Amendments.

Second, Defendant knowingly, intelligently, and voluntarily waived his right to have counsel present during the post-indictment interrogation.  A defendant knowingly, intelligently, and voluntarily waives his rights when the relinquishment of that right:

> was the product of a free and deliberate choice rather than intimidation, coercion, or deception . . . [and the waiver was] made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986).  The "totality of the circumstances surrounding the interrogation" must demonstrate "both an uncoerced choice and the requisite level of comprehension" to conclude that the right has been waived.  Id.

Here, there is no indication that the DEA agents used any physical or psychological pressure to elicit the statements made by Defendant.  See id. (these considerations are used to evaluate the voluntariness of the statement).  Although Defendant suggests that he was coerced by the agents' use of "psychology" (Doc. No. 25 at 7), in all his filings and statements made at several motions hearings, Defendant has not articulated what exactly the agents did or said that was psychologically coercive.  Moreover, Agent Gobin's testimony reveals that he ceased questioning Defendant when he indicated that he did not want to talk about co-conspirator Monica Harrison anymore:

> COUNSEL: [W]as there a portion of the conversation where he indicated an interest in continuing the conversation?
>
> . . .
>
> AGENT GOBIN: [A]t one point he didn't want to speak more about the details of Monica Harrison and that case . . .
>
> COUNSEL: Okay.  So, in the portions that he indicated that he did not want to go any further, did you continue to ask questions about those issues?
>
> AGENT GOBIN: No.

(Doc. No. 60 at 17-18.)

Defendant voluntarily provided the statements to the agents, and he was not coerced into making them.  Defendant never said that he required the presence of counsel before questioning.

Defendant told the agents that he understood his rights, and then affirmatively made statements to them.  Therefore, Defendant validly waived his constitutional rights.[5]

Because Defendant was given adequate warnings of his <u>Miranda</u> rights, and because he affirmatively waived those rights, Defendant's Motion to Suppress Post-Arrest Statements will be denied.

**B.  Motion to Dismiss for Pre-Indictment Delay**

Defendant also moves to dismiss his Indictment for unnecessary pre-indictment delay. (Doc. No. 26).  He asserts that the grand jury knew that the alleged conspiracy began in April 2011, that the Government was aware of all participants in the conspiracy at that time, and that several other co-conspirators had been tried and acquitted in 2013 and 2014.  (<u>Id.</u> at 1.) Defendant was not indicted until April 1, 2015, and claims that this delay unduly prejudiced him. (<u>Id.</u> at 2.)

Specifically, Defendant contends that the delay has put him at an unfair disadvantage because of the difficulty of remembering where he was on the dates of the alleged crimes, who he was with and what alibi evidence he can produce that would attest to his whereabouts on the critical dates.  (<u>Id.</u>)  He also alleges prejudice because of the difficulty in locating witnesses that can support his claim of innocence.  (<u>Id.</u>)  Defendant believes the delay was intentional so that the Government could build a stronger case against him and could get his co-conspirators to

---

[5] At the March 23, 2016 hearing, Defendant argued that Agent Gobin's October 27, 2015 testimony was inaccurate and inconsistent because Agent Gobin flip-flopped back and forth between testifying that Defendant did not want to talk during the post-arrest conversation and that he was willing to talk to the agents.  The Court disagrees.  A reading of the transcript from the hearing shows the consistency of Agent Gobin's testimony: Defendant did not indicate that he wished to remain silent, he began freely talking, and then he decided in the middle of the conversation that he did not want to speak about Monica Harrison anymore.

build "an alliance" against him.  (Id.)  Defendant argues his rights were violated under the Due Process Clause of the Fifth Amendment and that the Indictment therefore should be dismissed.

Under the Due Process Clause of the Fifth Amendment, defendants are protected against excessive prosecutorial pre-indictment delay.  United States v. Lovasco, 431 U.S. 783, 789 (1977); United States. v. Sebetich, 776 F.2d 412, 430 (3d Cir. 1985).  However, "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt."  Lovasco, 431 U.S. at 791.

A requirement:

"of prosecution upon probable cause is [] unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited."

Id. at 791-92.  To prevail on a motion to dismiss an indictment based on pre-indictment delay, the Defendant bears "the burden of proving two essential facts: (1) that the government intentionally delayed bringing the indictment in order to gain some advantage over him, and that (2) this intentional delay caused the defendant actual prejudice."  United States v. Ismaili, 828 F.2d 153, 167 (3d Cir. 1987); see also United States v. Beckett, 208 F.3d 140, 150-51 (3d Cir. 2000). Defendant has not met his burden here.

Defendant does not point to any "nefarious purpose on the part of the government" that shows it intentionally delayed bringing the Indictment against defendant to gain an unfair advantage over him.  See United States v. Ladson, 238 F. App'x 874, 876 (3d Cir. 2007). Defendant merely notes the passage of time between when the DEA finished the initial investigation and when the Government brought the Indictment against him.  This passage of time does not amount to prosecutorial bad faith or a "deliberate tactical maneuver by the

government." <u>Sebetich</u>, 776 F.2d at 430.  The Government asserts that any pre-indictment delay in this case resulted from its need to conduct a thorough investigation into this complex conspiracy.  (Doc. No. 34 at 14.)  Such investigative delay is permissible, for "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment, . . . [and] investigative delay . . . does not deprive a defendant of due process even if he is somewhat prejudiced by the lapse of time." <u>Snyder v. Klem</u>, 438 F. App'x 139, 141 (3d Cir. 2011) (quotations omitted).  Thus, Defendant has not demonstrated that the delay was intentional.

Defendant also asserts that he was prejudiced by the delay because the lapse in time has caused him to forget his whereabouts on the dates of the alleged crimes and consequently what alibi evidence he can provide.  However, "the contentions that the memories . . . faded as a result of the delay falls short of the requisite showing of actual prejudice."  <u>Sebitch</u>, 776 F.2d at 430; <u>see also</u> <u>U.S. v. Marion</u>, 404 U.S. 307, 325 (1971) ("that memories will dim, witnesses become inaccessible, and evidence be lost" as a result of pre-indictment delay "are not in themselves enough to demonstrate" prejudice enough to "justify the dismissal of the indictment.").  A fading memory is "inherent" in any delay, and absent a showing of intentional delay by the Government, it does not demonstrate "that [Defendant] cannot receive a fair trial."  <u>See</u> <u>Marion</u>, 404 U.S. at 325.

Because Defendant has failed to show that the Government intentionally delayed bringing the Indictment, and because the only prejudice Defendant presents is that arising from a lengthy investigation, which does not amount to a deprivation of due process, Defendant's Motion to Dismiss for Pre-Indictment Delay will be denied.

**C.  Motions on Grand Jury Matters**

Defendant filed four Pre-Trial Motions regarding the grand jury proceedings in this case: (1) a Motion to Dismiss for Abuse of the Grand Jury Process; (2) a Motion to Dismiss for Prosecutorial Misconduct; (3) a Motion to Dismiss for Fifth Amendment Violations, and (4) a Motion for Disclosure of Matters Occurring before the Grand Jury.  (Doc. Nos. 25, 56.)  He also made a Request for Disclosure of Grand Jury Empanelment Dates and Selection Records as an oral motion at the January 13, 2016 hearing.  (Doc. No. 71 at 6-8.)  The Court will address each Pre-Trial Motion and Request seriatim.

**1.  Motion to Dismiss for Abuse of the Grand Jury Process**

Defendant's next Pre-Trial Motion is a Motion to Dismiss for Abuse of the Grand Jury Process.  (Doc. No. 25 at 11-28.)  Defendant makes several allegations that the Government violated Federal Rule of Criminal Procedure 6(e)'s grand secrecy requirements by disclosing grand jury matters.  Specifically, Defendant alleges that:

> 1) "On or about March 29th, 2013 . . . [FBI] Agent Smith informed [Philadelphia Police Detective] Dilauro, among other things, that [Defendant] was under indictment for producing false prescription scripts . . . [and] requested that Dilauro preserve any evidence relevant to this case" (Doc. No. 70 at 2);
>
> 2) "On May 23rd, 2012 . . . [Agent] Smith stated to [police Detective] Konieczy that he has two full cases prepared against two employees of Dr. Burch and both cases have been forwarded to the U.S. Attorney's Office for prosecution" (id. at 17);
>
> 3)  "On September 30th, 2013, and October 18th, 2013 . . . Agent Smith specifically asked members of the [Philadelphia Police Department] if they could compare fingerprints [found on 14 prescriptions] to [those of] four targets of the investigation which included [Defendant and three co-conspirators]" (id. at 9);
>
> 4) "On March 29, 2013 . . . Dr. Burch mentioned to [Detective] DiLauro that two of Burch's ex-employees stole prescriptions [sic] pads from his office

and are cooperating with the DEA . . . this disclosure was made to Dr. Burch from government officials" (Doc. No. 61 at 11)[6];

5) the government violated several other secrecy provisions, including "disclosure . . . to government personnel that the attorney for the government did not consider necessary to assist in performing that attorney's duty to enforce criminal law . . ., the attorney for the government did not promptly provide the court that empaneled the grand jury with the names of all persons to whom disclosure has been made . . ., the attorney for the government did not certify that the persons disclosure was made to were advised of their obligation of secrecy . . ., persons whom disclosure was made to used that information for reasons other than to assist the attorney for the government in performing that attorney's duty to enforce criminal law . . ., [and the government] placed an obligation of secrecy on several witnesses" (id. at 12-13; see also Doc. No. 70 at 18-19); and

6) the government disclosed grand jury matters on the criminal docket during the trial of Jamar Cook by "fil[ing] a motion to permit introduction of evidence obtained from defendant Jamar Cook's proffer statements . . . [and] an investigation report involving a witness interview, . . . fil[ing] a trial memorandum . . . [disclosing] criminal conduct of uncharged individuals, . . . present[ing] a witness (Khalia Landers) . . . [who testified about] the details of Ms. Landers's cooperation [and plea agreement], . . . the revealing of targets, witnesses, on-going investigation, and uncharged criminal conduct of unindicted co-conspirators" (Doc. No. 70 at 10-17, see also Doc. No. 60 at 19-20).[7]

---

[6] A considerable number of people, including an employee who worked in Dr. Burch's office, were either organizers of the scheme involved here or acted as pseudo-patients who presented fake prescriptions for Oxycodone at pharmacies. Many of these individuals were charged as the only defendant in an Indictment. Dr. Burch, whose prescription forms were stolen and forged to facilitate the acquisition of the Oxycodone from pharmacies, was an innocent victim in this case.

[7] Defendant alleges that this sixth violation contains six separate components that resulted in violations of Rule 6(e). Because these six allegations relate to proceedings involving the trial of Jamar Cook, Defendant's co-conspirator, and encompass the same facts, the Court has consolidated them into one allegation for the ease of analysis and continuity.

Defendant asserts that these alleged Rule 6(e) violations amount to abuse of the grand jury process, and therefore his Indictment must be dismissed with prejudice. These arguments are unpersuasive.[8]

As an initial matter, it appears that no Rule 6(e) violation has occurred. Rule 6(e) prohibits the unauthorized disclosure of "matters occurring before the grand jury." The alleged disclosures that Defendant claims violated Rule 6(e) occurred prior to the empanelment of the grand jury in this case. (Doc. No. 69 at 7.) For support of his claims, Defendant clings to language used in In re Motions of Dow Jones & Co., 142 F.3d 496, 500 (D.C. Cir. 1998) that describes Rule 6(e) to encompass "not only what has occurred and what is occurring, but also what is likely to occur [before a grand jury]." (Doc. No. 71 at 4.) Yet the D.C. Circuit went on to clarify this language, explaining that "matters 'likely to occur'" pertain to "not yet delivered but clearly anticipated [matters]" such that their "revelation would [] elucidate the inner workings of the grand jury." In Re Sealed Case No. 99-3091, 192 F.3d 995, 1002-03 (D.C. Cir. 1999). These matters would include "the identity of witnesses and jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." Dow Jones, 142 F.3d at 500.

Moreover, information disclosed during an independent police investigation that might be related to a future grand jury investigation is beyond the scope of Rule 6(e)'s grand jury secrecy provisions. The Third Circuit has held that "information developed by the FBI, although perhaps developed with an eye toward ultimate use in a grand jury proceeding, exists apart from and was developed independently of grand jury processes." In re Grand Jury Matter (Catania), 682 F.2d

---

[8] The grand jury in this case was empaneled on August 9, 2013. (Def.'s Ex. D-11.) Therefore, allegations 1, 2, and 4 listed above occurred prior to the empanelment of the grand jury, and for this reason cannot serve as any basis for alleged violations of Rule 6(e)'s secrecy requirements.

61, 64 (3d Cir. 1982).  In <u>Catania</u>, the court found that no Rule 6(e) violation existed when the FBI transmitted to the district attorney information about an ongoing FBI investigation, including "tape recordings and transcripts of consensually monitored conversations, FBI 302's [interview reports], documents obtained without grand jury subpoena, and a prosecution memorandum summarizing the information compiled by the FBI investigation."  <u>Id.</u>  Because this information was the "fruits of a federal police investigation, not a federal grand jury investigation . . . [and because] the District Attorney [did] not know what part of the material he received was presented to the grand jury," the disclosures "[fell] outside Rule 6(e)."  <u>Id.</u> at 64-65.

Applying these principles, the Court is not convinced that the Government's alleged disclosures constitute violations of Rule 6(e).  As to the first alleged disclosure, Agent Smith was permitted while conducting an independent investigation to identify to Detective DiLauro that Defendant was the target of the investigation and to request that evidence be preserved in connection to it.  Although Detective DiLauro wrote in his report that he was told that Defendant was "under indictment," the Government explains that this was merely the detective's interpretation of what he was told, that Agent Smith never said that Defendant was under Indictment, and that in fact Defendant had not even been indicted at that time.  (Doc. No. 49 at 7.)  The second alleged disclosure, in which Agent Smith informed a police detective that he had two cases prepared against other targets and had forwarded them to the U.S. Attorney's Office for prosecution, is not a Rule 6(e) violation because Agent Smith was not the prosecutor and had no power to authorize an indictment and had no knowledge that an indictment would be brought at all.  The third alleged disclosure, in which Agent Smith asked members of the Philadelphia Police Department to compare fingerprints on evidence with those of Defendant and his co-conspirators, is a proper exercise of a federal agent's power to gather and preserve evidence

related to an independent investigation. This reasoning also extends to the fourth alleged disclosure, in which Dr. Burch was assisting the Government in its investigation of his employees. This activity did not constitute a Rule 6(e) violation either.

The fifth alleged violation is a generalized attack that the Government did not comply with Rule 6(e)'s protocols by informing the Court of certain information and filing the necessary paperwork. This allegation is simply a recitation of the provisions of Rule 6(e)(3)(B) that places certain obligations on the attorney for the Government and persons with access to grand jury information. There are bald assertions based on speculation and not underlying facts. The Court will not presume that these procedural requirements or Rule 6(e) were violated under these circumstances.

The sixth alleged violation, regarding disclosures made during the prosecution of Jamar Cook, does not constitute a Rule 6(e) violation that warrants dismissal of the Indictment in this case. Specifically, Defendant believes that the Government violated Rule 6(e) during the trial of Jamar Cook by: 1) revealing Defendant's name in an attachment to its Motion In Limine to admit Jamar Cook's proffer statements at trial; 2) naming Defendant in the Government's pretrial memorandum for the Jamar Cook trial; 3) disclosing the details of Khalia Landers' plea agreement during the trial of Jamar Cook, in which she names Defendant; and 4) allowing Khalia Landers to testify and name Defendant during the trial of Jamar Cook.

The alleged violations pertaining to Khalia Landers are not Rule 6(e) violations. First, the Government was obligated under <u>Giglio v. United States</u>, 405 U.S. 150 (1971), to present to the trial jury in the Cook case the plea agreement it had with Khalia Landers because she was a witness at the trial. Second, it was Khalia Landers, not the Government, who testified in open

court and revealed Defendant's name.  Her statements about him were relevant evidence at the Cook trial.  Such testimony does not amount to a violation of grand jury secrecy.

Defendant is correct, however, that the Government did reveal Defendant's name and possible criminal activity in a Motion In Limine and the pretrial memorandum filed in Jamar Cook's case.  At the time, the grand jury was investigating Defendant but had not yet indicted him, and under the circumstances this revelation could be viewed as a violation of Rule 6(e) because it revealed to the public the identity of the target the grand jury was investigating.  However, as discussed below, these purported violations constitute harmless error and do not justify dismissal of the Indictment.

Even if any of the disclosures identified by Defendant amount to a violation of Rule 6(e), Defendant has failed to meet the requirements of the pertinent standard for dismissal of an indictment in this situation, which is exceptionally high.  See United States v. Mitan, No. 08-cr-760, 2009 WL 1651288, at *6 (E.D. Pa. June 11, 2009).  "As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."  Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988).  In its review of a motion to dismiss for a violation of Rule 6(e), "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by [the Rules]."  Id.  As such, "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  Id. at 256; United States v. Soberon, 929 F.2d 935, 939-40 (3d Cir. 1991).

Defendant has not explained how the alleged violations were not harmless errors, or how they "substantially influenced the grand jury's decision to indict."  This lack of explanation is

17

particularly noticeable when, as the Government highlights, almost all of the alleged disclosures took place before the grand jury was even empaneled.  (Doc. No. 69 at 7.)  Moreover, absent a showing of how the Government's actions prejudiced Defendant, the Court will not take the "extraordinary" measure of dismissing the indictment.  See United States v. Smith, 282 F. App'x 143, 149 (3d Cir. 2008).

Defendant repeatedly asserts that the Court may use its supervisory power to dismiss an indictment absent a showing that he was prejudiced by—or that the grand jury's decision to indict was influenced by—any alleged Rule 6(e) violation.  (Doc. No. 61 at 16-20.)  Presumably Defendant makes this argument because he recognizes that he cannot make a showing of prejudice.  For support, Defendant cites several cases for the proposition that a court may dismiss an indictment absent a showing of prejudice.  See, e.g., (Doc. No. 70 at 6-7 (citing United States v. Simpson, 977 F.2d 1088 (9th Cir. 1991) and United States v. Hillman, 642 F.3d 929 (10th Cir. 2011)).)  Those cases, however, required "flagrant" misconduct or a pattern of prosecutorial abuse.  Defendant has not alleged any violation here that is "flagrant" and has not made a showing of a systemic pattern of prosecutorial misconduct.

A review of cases within the Third Circuit supports the conclusion that Defendant's claims are without merit.  For example, it is not flagrant prosecutorial misconduct in this jurisdiction to issue a sham subpoena to an undercover agent for the purpose of protecting an ongoing undercover investigation.  United States v. Martino, 825 F.2d 754 (3d Cir. 1987).  The government's misstatement of law to the grand jury is not considered flagrant misconduct that would prejudice the defendant and warrant dismissal of the indictment.  United States v. Blatt, No. 06-cr-268, 2007 WL 3287397, at *7 (E.D. Pa. Nov. 5, 2007);  see also United States v. Fisher, 692 F. Supp. 495, 504 (E.D. Pa. 1988) ("misstatements and mistakes alone, if such they

18

were, are not sufficient to warrant a finding of misconduct or to justify dismissal of an indictment") (citations omitted).  Ultimately, the Third Circuit has explained that even when there is flagrant and "extreme misconduct . . . in every case we [still] looked to prejudice." Martino, 825 F.2d at 759.  The alleged Rule 6(e) violations in this case—disclosure of the identities of the target and potential witnesses to other government agents conducting investigations—do not amount to misconduct as flagrant as that in the aforementioned examples, and Defendant is not nearly as prejudiced by these alleged violations as the defendants were in those cases.

Accordingly, the Court will not exercise its supervisory power and take the exceptional step of dismissing the Indictment because Defendant has failed to show how the independence of the grand jury was jeopardized by any alleged misconduct and how the grand jury's decision to indict Defendant was substantially affected by it.  Therefore, the Court will deny Defendant's Motion to Dismiss for Abuse of Grand Jury Process.

### 2. Motion to Dismiss for Prosecutorial Misconduct

The next Motion of Defendant in regard to the grand jury is his Motion to Dismiss for Prosecutorial Misconduct.  (Doc. No. 25 at 5, 29-35.)  In this Motion, Defendant re-asserts the same reasons that he advanced in his claim of grand jury abuse.  The only new claim that Defendant raises in this Motion is that the prosecution introduced prejudicial information in the form of evidence about his prior criminal conduct.[9]  (Id. at 5.)  Defendant believes this claim created a biased jury, and thus violated his Fifth Amendment rights.

---

[9] It is difficult to discern how this motion is in any way independent from the Motion to Dismiss for Abuse of Grand Jury Process.  Inasmuch as this Motion is coextensive with the Grand Jury Abuse Motion, the same reasoning applies to deny this Motion.

These claims are purely speculative, and at this stage are without any factual foundation. Furthermore, the quality of the evidence that can be presented to the grand jury has a broad scope—even if that evidence is hearsay or exclusively inculpatory. United States v. Williams, 504 U.S. 36, 50-52 (1992). Accordingly, this Motion will be denied.

### 3. Motion to Dismiss for Fifth Amendment Violations

Defendant also filed a Motion to Dismiss for Fifth Amendment Violations, alleging that he was not indicted by an independent and informed grand jury as guaranteed by the Fifth Amendment. (Doc. No. 56 at 2-4.) Specifically, he alleges the following violations of his Fifth Amendment rights:

1) "Agent Smith's request for evidence from Dt. DiLauro of the Philadelphia Police Department";

2) "Agent Smith [sic] request from numerous pharmacies for alleged fraudulent prescriptions to use as evidence";

3) "Agent Smith's request to Philadelphia Police Dept. Crime Scene Unit Commander and fellow Officers for latent finger prints";

4) "Agent Smith's request for evidence from Det. Konieczny of the Lower Merion Police Dept.";

5) "The government cancelled grand jury Subpoenas in order to conduct interviews with witnesses"; and

6) "The government placed restrictions on the grand jury investigation."

(Doc. No. 70 at 20-21.) Defendant's allegations do not amount to violations of his Fifth Amendment rights. He has not shown how the grand jury that indicted him was not independent and informed.

As to the first four alleged violations, Defendant argues that those "violations occurred . . . while a grand jury was empaneled to investigate the matter and without the grand jury themselves issuing subpoenas to acquire the evidence the government was seeking" (id. at

21), and for these reasons, the grand jury's independence was compromised.  This assertion is incorrect.  As an initial matter, the first alleged violation occurred on April 3, 2013 (Def.'s Ex. D-5), and the fourth alleged violation occurred on May 22, 2012 (Doc. No. 57-1 at 7).  As noted, the grand jury that indicted Defendant was empaneled on August 9, 2013.  (Def.'s Ex. D-11.) Thus, these violations do not support the claim that the grand jury was not independent.

As to the remaining alleged violations, Defendant argues that the grand jury's power to conduct an independent and informed investigation was hampered by the Government's own investigation to acquire evidence without grand jury subpoenas (alleged violations 2 and 3), the Government's screening of two witnesses before presentment of them to the grand jury (alleged violation 5), and the Government restricting the grand jury to only investigate certain individuals (alleged violation 6).  In short, Defendant claims that the Government improperly commandeered the grand jury investigation by selectively presenting evidence and witnesses to it, thereby violating Defendant's Fifth Amendment right to be charged by an independent grand jury.  These arguments are also without merit.

Although the grand jury "may determine alone the course of its inquiry," United States v. Calandra, 414 U.S. 338, 343 (1974), it depends on the prosecutor to "bring[] matters to the attention of the grand jury and gather[] evidence required for the jury's consideration," United States v. Sells Eng'g, Inc., 463 U.S. 418, 440 (1983).  The grand jury must be free to "itself decide to investigate a matter or to seek certain evidence," but it nonetheless needs "the prosecutor's office to secure the evidence or witnesses." Id.

Defendant has not alleged any colorable violations of his Fifth Amendment rights.  The Government conducts an investigation and presents evidence to the grand jury to support the prosecution's case.  It is then up to the grand jury to consider the evidence and determine if that

evidence establishes probable cause that a target committed a crime.  Defendant attacks this process with mere speculation.  Defendant has not demonstrated any act on the part of the Government that hindered the grand jury from engaging in a free and independent inquiry of its choosing and from properly making a decision based on the evidence before it.  As such, the jury's independence was not compromised, and this Motion will be denied.

### 4.   Motion for Disclosure of Matters Occurring before the Grand Jury

Defendant filed a Motion for Disclosure of Matters Occurring before the Grand Jury in which he seeks disclosure of instructions, prosecutorial comments, documents, testimony, voir dire evidence, and all exculpatory evidence that was presented to the grand jury that indicted Defendant.  (Doc. No. 25 at 3-4.)  Defendant's only basis for this broad request is his speculation that "improprieties took place," and that uncovering these potential improprieties would "support[] a motion to dismiss the indictment."   (Id. at 4.)   Defendant contends that the Government violated Rule 6(e) of the Federal Rules of Criminal Procedure by disclosing grand jury matters and that this impropriety therefore opens the door to a wholesale disclosure of all matters that occurred before the grand jury that indicted him.  He seeks these materials to allow him to determine if there were other improprieties before the grand jury.

It is a fundamental tenet of the grand jury process that "the proper functioning of the grand jury system depends on the secrecy of the grand jury proceedings."  Douglas Oil Co. of Cal. v. Petrol Stops NW, 441 U.S. 211, 218 (1979).  Defendants seeking to overcome the rule of secrecy "must show that the [need for] the material they seek . . . is greater than the need for continued secrecy."  Id. at 222.  Rule 6(e)(3) of the Federal Rules of Criminal Procedure provides for exceptions to the rule of secrecy, permitting disclosure of grand jury matters in limited circumstances.  When a defendant requests disclosure of grand jury matters, the court

may authorize disclosure "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). That Rule, however, "require[s] a showing of a particularized need or compelling necessity." Smith v. United States, 423 U.S. 1303, 1304 (1975).

Defendant has not met his burden of showing a particularized need or compelling necessity for the grand jury materials he requests. Nor does Defendant explain how his speculation about misconduct trumps the critical need for grand jury secrecy. He merely speculates that because he found several violations, others may have occurred, and thus he seeks to engage in a fishing expedition to uncover the hypothesized prosecutorial misconduct. (Doc. No. 25 at 4.) Rule 6(e)(3) does not create such a low bar to overcoming the need for secrecy. See United States v. Loc Tien Nguyen, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) ("[Rule 6(e)(3)(E)(ii)] is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse"). Rather, the Rule has been "consistently construed . . . to require a strong showing of a particularized need for grand jury materials before any disclosure will be permitted." Sells Eng'g, 463 U.S. at 443. Defendant's generalized speculation of possible misconduct is not particularized. See United States. v. Budzanoski, 462 F.2d 443, 454 (3d Cir. 1972) ("mere speculation that such improprieties may have occurred will not suffice to support that required showing [of a particularized need or prejudicial irregularities]"); United States v. Shane, 584 F. Supp. 364, 367 (E.D. Pa. 1984) ("courts generally reject unsupported beliefs and conjectures as grounds for disclosure of grand jury materials to defendants").

Defendant has not made a strong showing that grounds exist for dismissing the Indictment, as required by the Rule, and thus the Court will not contravene the "long-established policy that maintains the secrecy of the grand jury proceedings in federal courts." Dennis, 384

U.S. at 869 (quotations omitted).  Accordingly, the Court will not authorize disclosure of the grand jury materials that Defendant requests and will deny Defendant's Motion.

**5.   Request for Disclosure of Grand Jury Empanelment Dates and Selection Records**

At the hearing held on January 13, 2016, Defendant requested that the Government disclose all empanelment dates and selection records of grand juries empaneled for each of his co-conspirators.  (Doc. No. 71 at 6-12.)  Defendant argues that he should have been indicted earlier—when his co-conspirators were—and thus the information can confirm that his Indictment was unjustly delayed.  (Id. at 10-11.)  As such, Defendant believes he was prejudiced and that the delay "was misleading [to] the grand jury."  (Id. at 10.)

In support of his request, Defendant cites to 28 U.S.C. § 1867(f)—the Jury Selection and Service Act ("JSSA")—and Test v. United States, 420 U.S. 28 (1975), for the notion that he is entitled to this information.  (Id. at 9.)  28 U.S.C. § 1867(f) provides, in relevant part:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion [challenging compliance with selection procedures] . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

In reviewing the parameters of § 1867(f), the United States Supreme Court held in Test that under the statute:

> [A] litigant has essentially an unqualified right to inspect jury lists . . . in order to aid parties in the 'preparation' of motions challenging jury selection procedures . . . [and to promote] the [JSSA]'s overall purpose of insuring 'grand and petit juries selected at random from a fair cross section of the community.'

Test, 420 U.S. at 30.  Indeed, in that case the petitioner was challenging the jury selection process because the list from which the jury was selected disproportionately excluded minorities.

Defendant's reliance on these two authorities is misplaced.  First, Defendant has not indicated that he is preparing a motion to challenge the jury selection process as required by the statute, and nowhere has he alleged that the jury selection procedures employed in his case were in violation of the Jury Selection and Service Act.  In the absence of such a challenge to the jury selection procedures, 28 U.S.C. § 1867(f) and Test do not support Defendant's request for the grand jury empanelment dates and selection records he seeks.

Second, Defendant is requesting the empanelment dates and selection records of other grand juries, not the one that indicted him.  Such information regarding other grand juries is not relevant to Defendant's case.  Apparently, Defendant is arguing is that the disclosure of the information he requests will show that his own Indictment was delayed, leading to undue prejudice.  (Doc. No. 71 at 9-11.)  As discussed above in reviewing Defendant's Motion to Dismiss for Pre-Indictment Delay, however, Defendant has not proven that the Government intentionally delayed bringing his Indictment, and thus undue prejudice has not been shown.[10]

Because disclosure of the empanelment dates and jury selection records of other grand juries has no bearing on the procedures employed in the grand jury that indicted Defendant, this request will be denied.

---

[10]  Defendant relies on two Third Circuit decisions in arguing that he is entitled to the empanelment and termination dates of other grand juries.  (Doc. No. 82 at 3 (citing In re Grand Jury Investigation, 903 F. 2d 180, 184 (3d Cir. 1990) and In re Newark Morning Ledger Co., 260 F. 3d 217 (3d Cir. 2001).)  In those cases, witnesses were held in civil contempt for failure to comply with a court order to testify after the witness invoked his Fifth Amendment privilege.  Because the maximum amount of time that the witness could be incarcerated was the remaining life of the grand jury, the courts permitted the disclosure of the grand jury empanelment and termination dates.  The relevancy of that information is obvious in that context, and no such showing of relevancy has been made here because Defendant has not established that he was prejudiced by any delay in returning his Indictment.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will deny the remainder of Defendant's Pre-Trial

Motions.  An appropriate Order follows.